**UNITED STATES of America**

v.

**John SOURES, Appellant.**

**No. 83–5616.**

United States Court of Appeals,
Third Circuit.

Argued March 2, 1984.

Decided June 8, 1984.

W. Hunt Dumont, U.S. Atty., Michael V. Gilberti, Asst. U.S. Atty. (argued), Newark, N.J., for appellee.

Justin T. Loughry, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellant, substituted May 10, 1984.

Linda Dale Hoffa (argued), Reiners & Davis, Haddonfield, N.J. (former attorney), for appellant.

Before ADAMS and SLOVITER, Circuit Judges, and KELLY, District Judge *.

## OPINION OF THE COURT
SLOVITER, Circuit Judge.

### I.

### FACTS

John Soures appeals from his conviction and sentencing on one count of soliciting

---

* Hon. James McGirr Kelly, United States District Court for the Eastern District of Pennsylvania,

and accepting a payment in violation of 18 U.S.C. §§ 1954 and 2 prohibiting kickbacks for decisions relating to employee benefit funds. He claims that the statute does not apply to his conduct, that the evidence was insufficient to support a conviction, and that the trial judge erred in permitting the government to introduce only portions of his grand jury testimony.

Soures was president of an independent labor organization (Union) that represented minority workers in construction projects in New Jersey. He and the Union's Vice-President, Vernon Gurley, ran the Union, negotiated contracts, and administered the benefit programs. The Union was small and relatively unsuccessful, and had little funds for its daily operations.

A construction contractor with whom the Union had a collective bargaining agreement began work on a construction job in New Jersey at which the Union's members were employed. The builder discharged the contractor for its delays, and the Union imposed a lien on June 22, 1981 that protected, *inter alia,* unpaid welfare benefit funds. The imposition of the lien cut off the flow of money and shut down the project.

Counts 1, 2 and 3 of the indictment charged defendant Soures and his co-defendant Gurley with conspiracy and two substantive violations of 18 U.S.C. § 1954 in connection with their alleged solicitation and receipt of $2,000 on July 13, 1981 and another $2,000 on July 14, 1981 from a partner of the construction company and a plumbing contractor working on the project in exchange for subordination of the outstanding Union lien on that project. The jury acquitted both defendants on these counts.

Count 4 charged that both defendants violated 18 U.S.C. §§ 1954 and 2 by soliciting the payment of approximately $500 on August 11, 1981 from Morsit Brunson, the

sitting by designation.

plumbing contractor, and George Smith, an F.B.I. undercover agent posing as Brunson's partner, so that Soures could pay his rent, and threatening to reimpose the then subordinated lien on the construction project on which Brunson's plumbing company was then working if the payment was not forthcoming. The indictment charged that payment was made the following day. The jury acquitted Gurley of this count but convicted Soures. The district court sentenced Soures to two years' imprisonment with all but three months suspended. Soures filed a timely notice of appeal.

## II.

### SUFFICIENCY OF THE INDICTMENT CHARGE

■ Soures contends first that 18 U.S.C. § 1954 is inapplicable to the offense charged. Count 4 of the indictment charged, in part, that Soures and Gurley solicited "the payment of approximately $500 in cash from George Smith and Morsit Brunson, such payment being solicited in exchange for said Union officers not reimposing a then subordinated Union lien on a construction project in which Morsit's Plumbing Company was involved" in violation of § 1954. That section provides, *inter alia,* that an officer of a union with an employee benefit plan who:

> *receives* or agrees to receive or solicits *any* fee, kickback, commission, *gift,* loan, *money,* or *thing of value because of or with intent to be influenced with respect to, any of his* actions, *decisions,* or other duties *relating to any question or* matter *concerning such plan* ... shall be fined not more than $10,000 or imprisoned not more than three years, or both.

18 U.S.C. § 1954 (emphasis added).

Soures appears to be arguing that the statute applies only when there has been actual misuse of funds in an employee benefit plan. It is true that cases prosecuted under this section have generally involved payment to a union official or fund advisor in return for investment of union benefit funds. *See, e.g., United States v. Friedland,* 660 F.2d 919 (3d Cir.1981), *cert. de-nied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982) (fund's general counsel received percentage of loans fund made to individuals); *United States v. Palmeri,* 630 F.2d 192 (3d Cir.1980), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981) (union officials deposited funds in banks in return for unsecured personal loans in large amounts). *Cf. Romano v. United States,* 684 F.2d 1057 (2d Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982) (union officials directed deposits to banks giving gifts as premiums; officials' retention of gifts supported § 1954 conviction).

However, the statutory language is broad and is not by its terms limited to decisions regarding investment of union funds. Although no reported case has involved payment to union officials in return for decisions made by them in connection with the collection of money due the benefit plan or the protection of the fund's ability to collect such money, such decisions fall within the literal language of the statute. It covers receipt of any "money" (the rent money) by a union officer (Soures) with "intent to be influenced with respect to, any of his actions, decisions ..." (the decision to subordinate the lien) relating to "any question or matter governing such plan" (appellant Soures concedes "the subordinated lien related, in part, to money owed to the Union's employee benefit plans." Brief of Appellant at 15 n. 4).

Appellant has pointed to nothing in the legislative history to support his claim that the statute is limited to actual misuse of pension funds. The primary focus of § 1954 was kickbacks and bribery, but Congress also intended to protect union funds from all conflict-of-interest payments. *United States v. Romano,* 684 F.2d at 1063–64 (citing H.R.Rep. No. 998, 87th Cong. 1st Sess. 7, *reprinted in* 1962 U.S. Code Cong. & Ad.News 1532). Section 1954 was intended to ensure that anticipated benefits would be available when needed. H.R.Rep. No. 998, *supra,* 1962 U.S. Code Cong. & Ad.News at 1535.

A revealing reflection of Congressional purpose is shown by what Congress chooses to except. *See* J. Hurst, *Dealing with Statutes* 60–61 (1982). The only express limit to the scope of § 1954 is for the receipt of bona fide salary or compensation by the administrator or trustee in the regular course of duties. Thus, under an established tenet of statutory construction, "[i]f, but for the exception, the statute would then apply, Congress must intend its basic text to have an extremely broad reach." *Id.*

In each instance in which a question has arisen as to the interpretation and construction of § 1954, the courts have given the broad language of the statute full effect. In *United States v. Palmeri*, 630 F.2d 192, 199–200 (3d Cir.1980), this court considered to whom the prohibitions of the statute apply and concluded that the regulated class included "all persons who exercise control, direct or indirect, authorized or unauthorized, over the fund." In *United States v. Friedland*, 660 F.2d 919, 925–26 (3d Cir.1981), in interpreting the "because of or with intent to influence" clause, we held that acceptance of payment with the stated purpose of exercising one's influence was sufficient, regardless of the capacity to do so. We observed, "If actual exercise of influence were a prerequisite to a violation, then anyone who could potentially influence a future decision concerning a pension plan would be free to solicit kickbacks so long as he ultimately took no action to influence the decision. Such a construction is *inconsistent with the broad purpose of § 1954.*" *Friedland*, 660 F.2d at 926–27 (emphasis added). In *United States v. Romano*, 684 F.2d at 1064, the Second Circuit concluded that the intention of the "kickback" clause was "to reach all fiduciaries who profit (other than by their regular compensation) as the result of their decisions to invest union pension funds," and that all conflict-of-interest payments fell within the statute.

We cannot accept defendant's argument that the subordinated lien was too far removed from the employee benefit plan to fall within § 1954. The source of defendant's power to extract the money was his ability to manipulate the lien. The lien arose, in part, from unpaid welfare benefit funds. *See* App. at 118a–124a, 577a–578a. Defendant was accused of accepting money to pay his rent with the intention of being influenced not to reimpose the lien that protected the Union's ability to collect its benefit funds. Without such funds, and the record shows that no such funds were deposited into the benefit funds account from this job, there could be no viable employee benefit plan. Therefore, there is a sufficient connection between the decisions influenced by the payoff and the plan.

In *United States v. Lanni*, 466 F.2d 1102, 1109 (3d Cir.1972), this court observed, "Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature." In consideration of the legislative concern that motivated the enactment of § 1954, we conclude that this provision properly applies to the offense charged against defendant in Count 4 of the indictment.

### III.

### SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that the evidence was insufficient to support a "payoff" conviction under § 1954, and argues that the money he received was instead a payment to the Union which he embezzled or converted to his own use, constituting a violation of 29 U.S.C. § 501(c). This was a question for the jury.

■ We must uphold a conviction if it is "supported by substantial evidence, taking the view most favorable to the government." *United States v. Bycer*, 593 F.2d 549, 551 (3d Cir.1979). In addition to other evidence introduced by the government, there was a telling videotape of a meeting among Soures, Brunson and Smith which includes the following statement by Soures:

> Now I'm, *I'm gonna put the lien on the job. I'm going to put the lien if I can't get,* now listen man, I (Inaudible) *I need*

*five hundred dollars for my rent,* that's all ....

App. at 1092a (Ex. 28) (emphasis added). We have reviewed the record and conclude there was sufficient evidence to support the jury's verdict and to establish that Soures agreed not to reimpose the lien in exchange for the $500 from Brunson and Smith.

## IV.

### ADMISSION OF GRAND JURY TESTIMONY

Finally, Soures argues that the district court erred in permitting the government to introduce only portions of his grand jury testimony. Soures voluntarily testified twice before the grand jury, the second testimony having been given some six weeks after the first. The government sought to introduce excerpts of Soures' testimony on the first day. Soures argued that the failure to read both days' testimony violated Rule 106 of the Federal Rules of Evidence and presented a Fifth Amendment problem.

Under Fed.R.Evid. 106, when a party introduces a writing or part thereof, the opponent may require the other party to introduce any other part or writing "which ought in fairness to be considered contemporaneously with it." Under this doctrine of completeness, a second writing may be required to be read if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding. *United States v. Marin,* 669 F.2d 73, 84 (2d Cir. 1982).

The Rule does not require introduction of portions of a statement that are neither explanatory of nor relevant to the passages that have been admitted. *Id.* at 84–85. The district judge here found that there was no need to read the second day's grand jury testimony in order to place the first day's testimony in a fair light. He based this ruling on the fact that Soures was given and made use of an opportunity to make any statements he desired at his first hearing. App. at 37a–39a. He also carefully reviewed the portions that were used, and required additions where he felt a misleading impression could be created. App. at 39a–49a. We cannot say the district court abused its discretion, our standard of review. *See United States v. Walker,* 652 F.2d 708, 713 (7th Cir.1981).

Appellant also contends that because of the introduction of only selected portions of his first day of grand jury testimony, he was forced to take the stand to testify at trial in violation of his Fifth Amendment right against self-incrimination. However, the Fifth Amendment is implicated only if the evidence admitted presented a distorted picture of his prior statements. *United States v. Marin,* 669 F.2d at 85 n. 6; *United States v. Walker,* 652 F.2d at 713. Soures testified before the grand jury voluntarily and was given *Miranda* warnings on both occasions. The trial judge carefully reviewed the statements and the portions admitted to guard against distortion, and we cannot find that the court's decision adversely affected Soures' Fifth Amendment right.

## V.

For the foregoing reasons, we will affirm the judgment of conviction.