**In re FAIRCHILD INDUSTRIES, INC. AND GMF INVESTMENTS, INC., "ERISA" LITIGATION.**

MDL No. 822.

United States District Court, N.D. Florida, Pensacola Division.

Dec. 28, 1990.

Barry Richard, Roberts, Baggett, LaFace & Richard, Tallahassee, Fla., for Oscar Ray Hall, et al.

James I. Serota, Huber, Lawrence & Abell, New York City, for Fairchild Industries, Inc.

William H.F. Wiltshire, Pensacola, Fla.

Hugh McBreen, McBreen & McBreen, Chicago, Ill.

Bill B. McEachern, Jr., Carlton, Fields, Ward, Emmanuel et al., Pensacola, Fla., for FDIC.

Donald H. Partington, Pensacola, Fla., for NCNB.

## ORDER

VINSON, District Judge.

Pending are the motions to dismiss of defendant Fairchild Industries, Inc. ("Fairchild") (doc. 84) and defendants E. Garrett Bewkes, Jr., Mortimer M. Caplin, Emanuel Fthenakis, Robert V. Hansberger, Harvey L. Karp, Charles A. Kuper, William T. Marx, Robert L. May, Thomas H. Moorer, George Soros, R. James Woolsey, and Paul E. Wright ("Fairchild Directors") (doc. 18); plaintiff NCNB's motion to dismiss the counterclaim of Fairchild and the Fairchild Directors (doc. 21), plaintiff NCNB's motion to dismiss the counterclaims of GMF Investments, Inc. ("GMF"), Peter Dauchy, Frederick H. Kopko, and Gene R. Morgan ("GMF Directors"), and Metro Aviation, Inc. ("Metro"); and third-party defendant Federal Deposit Insurance Corporation's ("FDIC") motions to dismiss the third party complaints of GMF, the GMF Directors (doc. 61), Fairchild (doc. 62), and the Fairchild Directors (doc. 63). For the reasons stated herein, defendants Fairchild and Fairchild Directors' motions are GRANTED in part and DENIED in part, plaintiff's motions to dismiss counterclaims are GRANTED, and third-party defendant FDIC's motions to dismiss third-party complaint are GRANTED.

This action arises under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiffs are employees of Crestview Aerospace Corporation ("Crestview") and Fairchild Aircraft Corporation ("Aircraft"), formerly wholly-owned subsidiaries of defendant Fairchild. Also named as defendants are the Fairchild Directors, GMF, Metro, and the GMF Directors.

In October 1986, Fairchild established an employee stock option plan for its employees and the employees of its subsidiary corporations ("Fairchild ESOP"). On or about September 30, 1987, Fairchild entered into a purchase agreement with GMF for the sale to GMF of Crestview and Aircraft ("Purchase Agreement"). Pursuant to the Purchase Agreement, GMF would establish a new ESOP and the Crestview and Aircraft employees would have the option of either receiving a lump sum payment of each employee's entire vested balance in the Fairchild ESOP or having the vested balance transferred to the new GMF plan ("Aircraft ESOP"). In January 1988, the Fairchild ESOP participants were allegedly notified of this option and numerous participants informed Fairchild of their election for lump sum distribution.

Although the Purchase Agreement was to be finalized on October 15, 1987, GMF was unable to arrange financing. On November 30, 1987, Fairchild declared a de-

fault by GMF under the Purchase Agreement. Thereafter, Fairchild granted certain financial concessions to GMF and the transaction was finally consummated. Fairchild received from Metro a $10 million unsecured note due December 18, 1989. The note was guaranteed by Aircraft, but subordinated to all claims of Citicorp North America, Inc., and Citicorp, N.A. Fairchild agreed to advance Aircraft funds for payment of certain expenses.

In January of 1988, GMF requested that Fairchild agree to an amendment to the Purchase Agreement to delete the lump sum distribution option. GMF allegedly informed Fairchild of its intent to use the funds transferred to the Aircraft ESOP to purchase GMF stock, thus providing GMF with needed cash to meet its financial obligations. As of March 1, 1988, Fairchild was a major creditor of GMF and allegedly had reason to believe that its loans were in jeopardy. Aircraft was currently in default on at least two obligations. On March 3, 1988, Fairchild and GMF executed the "Third Amendment to the Purchase Agreement" which deleted the lump sum distribution option. Fairchild also required that the amendment provide for the appointment of First RepublicBank San Antonio, N.A. ("First Republic") or some other independent banking institution as trustee for the new Aircraft ESOP. Fairchild also insisted that GMF indemnify and hold Fairchild harmless from any claims arising out of the ESOP's management. As a consequence of the Third Amendment, no assets were distributed to the ESOP's Crestview and Aircraft employee participants. First Republic was appointed trustee on March 4, 1988, and the funds were transferred from the Fairchild ESOP to the Aircraft ESOP on March 8, 1988. On March 11, 1988, First Republic, as transferee of the Aircraft ESOP, purchased GMF stock for $2.2 million with ESOP funds. Prior to July of 1988, GMF allegedly received several offers to purchase the GMF stock, including a formal $22 million offer by an Aircraft management group to purchase all outstanding GMF stock, including those shares held by the Aircraft ESOP. Despite GMF's precarious financial condition, the offer was rejected. The offer would have resulted in a cash payment of $200 per share, a 100% return on the investment for the Aircraft ESOP participants. The financial condition of both GMF and Aircraft continued to deteriorate and Aircraft filed a petition for bankruptcy on February 1, 1990. First Republic's financial condition also deteriorated, and the FDIC was appointed receiver for First Republic. The FDIC ultimately sold First Republic's assets, including its trust accounts, to NCNB.

## DISCUSSION

A motion to dismiss for failure to state a claim should not be granted unless it appear to a certainty "that the plaintiff can prove no set of facts that would entitle him to relief." *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). *See also Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971). This standard mandates that I accept the allegations in the complaint as true and resolve them in the light most favorable to the plaintiff. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 702 (11th Cir.1985).

I. *Defendants Fairchild and Fairchild Directors' Motions to Dismiss under Rule 12(b)(6).*

Defendants Fairchild and the Fairchild Directors have moved to dismiss plaintiffs' amended complaint on the grounds that it fails to state a claim upon which relief may be granted under Rule 12(b)(6), *Federal Rules of Civil Procedure.*

■ (A) *Count I—Prohibited Transfer.* In Count I, plaintiffs allege that defendants Fairchild and the Fairchild Directors violated Title 29, United States Code, Section 1058, by executing the Third Amendment to the Purchase Agreement and transferring the assets to the Aircraft ESOP, knowing that GMF intended to immediately convert the funds to GMF stock. Plaintiffs alleges that at this time, GMF's financial position was "patently insecure" and the stock was worth substantially less that the amount paid for it with Aircraft ESOP assets. Plaintiffs do not dispute

that all of the assets in the Fairchild ESOP were transferred in kind to the new Aircraft ESOP.

Section 1058 provides in pertinent part: (a) A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan ... unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had been terminated).

29 U.S.C. § 1058. Federal courts have held that Section 1058 imposes only a minimum "rule of benefit equivalence" on employers. *See, e.g., Bigger v. American Commercial Lines, Inc.,* 862 F.2d 1341, 1344 (8th Cir. 1988). Thus, these courts rejected claims that the employers were obligated to transfer surplus funds or that the employers could be held liable for the failure of future benefits to increase. *See id.; Dougherty v. Chrysler Motors Corp.,* 840 F.2d 2, 3 (6th Cir.1988).

Section 1058 provides a specific standard that employers can rely upon in allocating assets to spunoff plans....

\* \* \* \* \* \*

A sponsor of an original defined benefit plan, however, has no duty to guarantee that the sponsor of a spunoff plan will pay spunoff employee benefits earned in the future. As the language in section 1058 clearly states, original sponsors of defined benefit plans are required to transfer only sufficient assets to provide for the benefits earned as of the date of the spinoff.

*Bigger, supra,* 862 F.2d at 1344–45.[1]

As the plaintiffs correctly contend in their memorandum in opposition to defen-

dants Fairchild and the Fairchild Directors' motions to dismiss, they do not argue that Fairchild failed to distribute a surplus or to guarantee future earnings in the Aircraft ESOP. Rather, plaintiffs seek to examine the transfer as only one part of a larger scheme which ultimately deprived the Aircraft ESOP participants of the value of their accrued benefits. Nevertheless, the plain meaning of the statute requires only that the funds be equal "immediately before" and "immediately after" the merger, consolidation, or other event triggering the necessity of transferring funds. Plaintiffs have cited no authority, and I am unaware of any, finding a violation of Section 1058 after all assets of a pension plan were transferred in kind to a successor plan subsequent to a spin-off, merger, consolidation, etc. I am unwilling to distort the plain meaning of the statute to look beyond the point of transfer. Therefore, defendants Fairchild and the Fairchild Directors' motions to dismiss Count I are hereby GRANTED.

 (B) *Count II—Prohibited Decrease In Benefits.* In Count II, plaintiffs allege that defendants Fairchild and Fairchild Directors violated Title 29, United States Code, Section 1054(g), by denying the ESOP participants their right to immediate lump sum distribution which was allegedly created in the initial Purchase Agreement. Plaintiffs allege that the Third Amendment to the Purchase Agreement constituted an "amendment to the plan" under Section 1054(g), on a theory that the initial Purchase Agreement created distribution rights in the ESOP participants. Defendants contend that Section 11.6 of the Purchase Agreement negates any creation of third party rights.[2] Furthermore, defendants contend that this paragraph does not constitute an "amend-

---

**1.** A spin-off is defined as "the splitting of a single plan into two or more plans." *United Steelworkers of America v. Cyclops Corp.,* 860 F.2d 189, 199 n. 8 (6th Cir.1988) (quoting 26 C.F.R. § 1.414(I)–1(b)(4)).

**2.** Section 11.6 provides:
*No Third Party Rights.* Except as applied to the Subject Entities and the Buyer, the provi-

sions of this Agreement shall not entitle any person not a signatory hereto to any rights hereunder, as a third party beneficiary or otherwise, it being the specific intention of the parties herein to preclude any and all such persons non-signatory hereto from such rights.
(doc. 86, App. B).

ment" to the plan as contemplated by ERISA. Plaintiffs counter by contending that an amendment to a plan may be created orally, by informal written agreement, or even secretly.

Section 1054(g) provides in relevant part:

> (g) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(a) of this title.

29 U.S.C. § 1054(g). Although the cases cited by the defendant are inapposite,[3] those cited by the plaintiffs also fail to lend support to their position. Plaintiffs argue that an ERISA plan may be established by unwritten policy or by oral or written representations to the plan participants, citing *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) and *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985). To the extent that these cases hold that the existence of a written instrument is not a prerequisite to ERISA coverage, I have to reluctantly agree. *See, e.g., Donovan*, 688 F.2d at 1372 ("There is no requirement of a formal, written plan in either ERISA's coverage section ... or its definitions section ... [T]hese ... are not prerequisites to coverage under the Act."). Nevertheless, a written plan must be given effect according to its terms, and cannot ordinarily be amended informally. For example, in *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986), the Eleventh Circuit Court of Appeals rejected a claim of estoppel by oral representations, concluding that oral amendments to employee benefit plans are impermissible under ERISA:

> The conclusion that under ERISA oral modifications of employee benefit plans are impermissible is buttressed by the observation that Congress expressly pro-

hibited informal written amendments of ERISA plans. ERISA requires that each plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."

*Id.* at 960 (quoting 29 U.S.C. § 1102(b)(3)). The court noted that not only were oral modifications impermissible, but informal written modifications as well. Similarly, in *Alday v. Container Corp. of America,* 906 F.2d 660 (11th Cir.) *cert. denied,* — U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1990), the court rejected an appellant's claim that the district court had erred when, in reviewing the terms of the plan, it refused to consider communications between the employing company and its employees. *Id.* at 665. "Although *Nachwalter* involved only oral representations, the court based its holding on the fact that Congress expressly prohibited informal *written* amendments of ERISA plans under 29 U.S.C. § 1102(b)(3)." *Id.* I conclude, as did the *Alday* court, that *Nachwalter* is dispositive. Because ERISA prohibits the amendment of an employee benefit plan through informal written documents, or by any other means except as specified in the plan documents themselves pursuant to ERISA, the Purchase Agreement could not legally operate to amend the plan documents. This conclusion is buttressed by the contracting parties' clearly expressed intent not to create any third party rights by executing the agreement. Therefore, plaintiffs have failed to state a cause of action under Section 1054(g), and the defendants' motions to dismiss are hereby GRANTED.

■ (C) *Count III—Breach of Fiduciary Duty (Misuse of Assets).* In Count III, plaintiffs have alleged that defendants Fairchild and the Fairchild Directors

---

**3.** The cases involved the exercise of authority already provided by the employee benefit plans in question; therefore, no need to "amend" the plan ever arose. *See, e.g., Oster v. Barco of Calif. Employees' Retirement Plan,* 869 F.2d 1215, 1221 (9th Cir.1988) (committee adopted policy which applied to provision which was already part of benefit plan); *Dooley v. American Airlines, Inc.,* 797 F.2d 1447, 1452 (7th Cir. 1986), *cert. denied,* 479 U.S. 1032, 107 S.Ct. 879, 93 L.Ed.2d 833 (1987) ("[W]e are unwilling to

contort the plain meaning of 'amendment' so that it includes the valid exercise of a provision which was already firmly ensconced in the pension document"); *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552, 1554 (D.C.Cir.), *cert. denied,* 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984), *appeal after remand,* 795 F.2d 1079 (1986) (holding that exercise of plan provision permitting cancellation of employees' precontributory service was not "amendment").

breached their fiduciary duties of loyalty and due care by executing the Third Amendment to the Purchase Agreement, by spinning off the Aircraft ESOP, and by transferring the employees' vested funds of the old ESOP to the new ESOP, knowing that GMF intended to use those funds to purchase GMF stock which was declining in value because of GMF's deteriorating financial condition. The plaintiffs further allege that these actions were taken in order to benefit Fairchild by providing a mechanism for GMF to pay liabilities owed to Fairchild at a time when GMF was in serious financial trouble, as well as facilitating the sale under the Purchase Agreement. At the time of the execution of the Third Amendment to the Purchase Agreement and the spin-off of the Aircraft ESOP, it is not disputed that Fairchild was trustee of the original Fairchild ESOP. It had a fiduciary obligation to not take action that jeopardized the ESOP participants' benefits. I find these allegations sufficient to survive a motion to dismiss. Therefore, defendants Fairchild and Fairchild Directors' motions to dismiss Count III are hereby DENIED.[4]

■■■ (D) *Count V—Third Party Beneficiaries.* In Count V, plaintiffs allege that the original provision of a lump sum distribution option in the unamended Purchase Agreement entitled them, as third party beneficiaries, to receive distribution of the benefits. Plaintiffs further allege that after receipt of notice of this right, numerous participants sent timely, but ignored, notices of their intent to exercise the option. Defendants contend that plaintiffs may not claim third party beneficiary status, given the express disavowal by the contracting parties of any intent to create rights in third parties to the Purchase Agreement.

Neither party has contested that Delaware law governs the interpretation of the Purchase Agreement. *See* doc. 86, App.D. Delaware law is well-settled on third-party beneficiary claims. In order for a plaintiff to be considered a third-party beneficiary, the contracting parties must intend to confer a benefit on the plaintiff. *See, e.g., Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d 1378, 1386 (Del.Super.1990); *Delmar News, Inc. v. Jacobs Oil Co.,* 584 A.2d 531, 534 (Del.Super.1990); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322 (Del.Super.1973); *Restatement (Second) Contracts* § 302 (1979). Furthermore, the conferral of the benefit on the third party, creditor or donee, must be a material part of the contract. *Guardian Constr. Co.,* 583 A.2d at 1386. *See also Insituform of N. America, Inc. v. Chandler,* 534 A.2d 257 (Del.Ch. 1987). "If, however, the parties to the contract did not intend to benefit the third-party but the third-party happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract." *Delmar News, Inc.,* 584 A.2d at 534. Plaintiff alleges that "[e]mployees of Crestview and Aircraft who were participants in the Industries ESOP were third party beneficiaries of the provision in the Purchase Agreement for sale entitling them to receive distribution of their benefits." Doc. 82, par. 37. This is insufficient to state a claim for breach of contract based on third party beneficiary status. Plaintiffs have failed to allege any intent by the contracting parties to confer a benefit on the plaintiff. Such conclusory allegations fail to state a claim upon which relief may be granted. Therefore, defendants Fairchild and the Fairchild Directors' motions to dismiss Count IV are GRANTED.[5]

---

**4.** Plaintiffs specifically contend that these actions were taken in violation of Title 29, United States Code, Sections 1104(a)(1) ("exclusive purpose" rule), 1104(a)(1)(B) (due care), 1106 (transactions between plan and party in interest or fiduciary), 1058 (prohibited transfer), 1054(g) (permitting reduction in accrued benefits), and 1105(a) (knowingly participating in or failing to remedy breach by co-fiduciary).

**5.** Even if Count V sufficiently set out the elements of a cause of action under a third party beneficiary status, it appears that such a claim would be preempted by ERISA. Federal courts which have addressed the viability third party beneficiary claims in ERISA actions have uniformly held these claims defeated by ERISA's broad preemption provision. *See, e.g., May v. Houston Post Pension Plan,* 898 F.2d 1068, 1070

■ *(E) Count VI—RICO.* In Count VI, plaintiffs have alleged violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C.A. §§ 1961–68 (1984) ("RICO"). Plaintiffs contend that defendants committed at least three "racketeering" acts as defined in Section 1962: executing the Third Amendment to the Purchase Agreement, transferring the Fairchild ESOP assets to the Aircraft ESOP, and failing to permit ESOP participants to receive lump sum distribution of accrued benefits.[6]

RICO prohibits "any person" from (1) using or investing any income derived from a "pattern of racketeering activity" in any enterprise which affects interstate commerce; (2) acquiring, through a pattern of racketeering activity, an interest or control of any enterprise affecting interstate commerce through a pattern of racketeering activity; (3) conducting or participating, through a pattern of racketeering activity, in the affairs of an enterprise affecting interstate commerce; and (4) conspiring to violate the above provisions. 18 U.S.C.A. §§ 1962(a)–(d) (1984). Private aggrieved parties may bring a civil action against those who violate Section 1961, and shall recover, if successful, treble damages and attorney fees. 18 U.S.C.A. § 1964 (1984). Plaintiff must show: (a) a violation of Section 1962; (b) some injury to business or property; and (c) that the injury was caused by the violation. *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990).

In order to state a claim under Section 1962, plaintiff must allege a "pattern of racketeering activity." Such a pattern requires both relatedness and the threat of continuing racketeering activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239–42, 109 S.Ct. 2893, 2900–02, 106 L.Ed.2d 195, 208–09 (1989). "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901, 106 L.Ed. at 208 (quoting 18 U.S.C. § 3575(e)). "Continuity," however, is

> centrally a temporal concept ... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement:* Congress was concerned in RICO with long-term criminal conduct.

*H.J., Inc., supra,* 492 U.S. at 242, 109 S.Ct. at 2902, 106 L.Ed. at 209 (emphasis added).

Section 1961 defines "pattern of racketeering activity" as requiring at least two acts of "racketeering activity," one of which must have occurred in the preceding ten years. 18 U.S.C.A. § 1961(5) (1984). *See also Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988). "Racketeering activity" includes actions which are indictable under the enumerated federal statutes, including Title 18, United States Code, Section 1954. Plaintiffs have alleged that defendants Fairchild and the Fairchild Directors violated Section 1954 by executing the Third Amendment, transferring the Fairchild ESOP assets to the Aircraft ESOP, and failing to provide the employees with the

---

n. 2 (5th Cir.1990); *Pension Fund Mid Jersey Trucking Indus. Local 301 v. Omni Funding Group,* 731 F.Supp. 161, 170 (D.N.J.1990); *Mayeske v. International Assoc. of Firefighters,* 1989 WL 37154, *13 (D.D.C.1989) (memorandum opinion) (text available on WESTLAW); *Albert Einstein Medical Center v. National Benefit Fund for Hosp. & Health Care Employees,* 740 F.Supp. 343, 347 (E.D.Pa.1989); *Health Scan, Ltd. v. Travelers Ins. Co.,* 725 F.Supp. 268, 270 (E.D.Pa. 1989); *Multicare Health Care Servs., Inc. v. General Am. Life Ins. Co.,* 720 F.Supp. 581, 582

(N.D.Tex.1989); *Morales v. Pan Am. Life Ins. Co.,* 718 F.Supp. 1297, 1330 (E.D.La.1989), *aff'd,* 914 F.2d 83 (5th Cir.1990). However, I find it unnecessary to address the preemption issue, as neither party has raised it.

**6.** Plaintiffs also alleged that the GMF stock purchase constituted a predicate act. However, the purchase was made by First Republic, who has not joined in this motion to dismiss.

lump sum distribution option. (doc. 82, par. 41(a)–(b)). Section 1954 provides in pertinent part:

> Whoever being ... an administrator, officer, trustee, custodian ... of any employee welfare benefit plan or employee pension benefit plan ... receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to, any of his actions, decisions, or other duties relating to any question or matter concerning such plan or any person who directly or indirectly gives or offers, or promises to give or offer, any fee, kickback, commission, gift, loan, money, or thing of value prohibited by this section, shall be fined not more than $10,000 or imprisoned not more than three years, or both.

18 U.S.C. § 1954. "Thing of value" is not limited to tangible items with identifiable commercial value, but may include certain intangibles as well. *See United States v. Schwartz*, 785 F.2d 673, 680–81 (9th Cir.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986) (providing assistance in arranging merger of unions and other services). Nor is Section 1954 limited to actual misuse of pension funds. *See, e.g., United States v. Soures*, 736 F.2d 87 (3d Cir. 1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985) (defendant could be indicted for soliciting payments in exchange for refraining from reimposing lien). However, in order to demonstrate a violation of Section 1954, the plaintiff must allege that "defendant served in one of the positions specified in the first part of the statute, and that he solicited or received certain benefits with intent to be influenced in his dealings with the employee benefit plan." *United States v. Palmeri*, 630 F.2d 192, 199 n. 3 (3d Cir.1980), *cert. denied sub nom. Campisano v. United States*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616

(1981). Plaintiff must allege that defendants Fairchild and the Fairchild Directors accepted payment with the purpose of exercising their influence over the employee benefit plan. *United States v. Friedland*, 660 F.2d 919, 926 (3d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982).

In their amended complaint, plaintiffs merely allege that the aforementioned acts were a violation of Section 1954. There are no allegations that defendants Fairchild or the Fairchild Directors received anything of value for the purpose of exercising influence over the ESOP. At most, plaintiffs have alleged that the purchase of GMF stock by First Republic provided GMF with needed cash. Plaintiffs imply that this was part of a scheme to protect Fairchild as a creditor. However, nowhere in the complaint do the plaintiffs allege that Fairchild actually received payment on the defaulted obligations of GMF, or that its creditor position was in some way enhanced. Nor is there any indication of the manner, if any, in which defendants Fairchild and the Fairchild Directors actually exercised their influence over the plan. *See Ris v. Bedell*, 699 F.Supp. 429, 434 (S.D.N.Y.1988) (dismissal appropriate where plaintiff failed to specify way in which defendant was influenced in his investment decisions concerning plan). Plaintiffs' conclusory allegations of violations of Section 1954 are insufficient to establish the predicate acts requisite to a prima facie claim under RICO.[7]

Even assuming that the plaintiffs have alleged sufficient predicate acts to satisfy the "relationship" prong, the plaintiffs have nevertheless failed to demonstrate a valid RICO claim. *H.J., Inc., supra*, instructs the lower courts to consider whether there are sufficient allegations of "continuity," that is, the threat of continued criminal activity. 492 U.S. at 239, 109 S.Ct.

---

7. Plaintiffs have clearly appreciated the deficiencies in their amended complaint. In their memorandum in opposition to defendants Fairchild and the Fairchild Directors' motion to dismiss, plaintiffs seek vainly to amend their complaint to include alleged violations of Title 18, United States Code, Section 664 (embezzlement), which they "inadvertently" failed to men-

tion in the amended complaint. Plaintiffs' failure to demonstrate the requisite predicate acts has been challenged on more than one occasion, *see* doc. 17 (defendant Fairchild's motion to dismiss original complaint), and these new allegations will be disregarded for purposes of the pending motions to dismiss.

at 2900, 106 L.Ed.2d at 208. Plaintiffs' allegations simply cannot withstand scrutiny under this prong of the *H.J., Inc.* analysis. The alleged goal of the RICO scheme was concededly accomplished, i.e., to execute the Third Amendment, spin off the Aircraft ESOP, and transfer funds to the new ESOP which would be used to purchase stock GMF stock. Plaintiffs have failed to allege a specific threat of future harm to the Aircraft ESOP participants. Plaintiffs have vaguely alleged that these acts exhibited the defendants' willingness to misuse pension funds for their own interests and that there was some "discussion" of the manipulation of other pension plans. Nevertheless, in light of plaintiffs' failure to demonstrate the criminality of the earlier activity, I cannot find these vague allegations sufficient to demonstrate a threat of future criminal activity. Therefore, defendants Fairchild and Fairchild Directors' motions to dismiss Count IV are hereby GRANTED. I do not find that plaintiffs' allegations are so meritless as to justify the imposition of sanctions under Rule 11, *Federal Rules of Civil Procedure.* Therefore, defendants' motions for Rule 11 sanctions are DENIED.

II. *Plaintiff NCNB's Motions to Dismiss Counterclaims of Fairchild, Fairchild Directors, GMF and GMF Directors.*

█ The defendants' counterclaims essentially allege that as the assignee of First Republic, by virtue of its purchase from the FDIC, plaintiff NCNB steps into the shoes of First Republic with respect to any improprieties alleged to have been committed by it. Any defense to which First Republic would have been subject should now be good as against its assignee, NCNB. Therefore, NCNB should be held liable for breach of fiduciary duty and hence for contribution to the defendants.

The plaintiffs challenge this claim on two grounds: first, both by statute and contract, NCNB can not be held liable for any breach of fiduciary duty by its predecessor, First Republic. Second, what little federal case law has addressed the issue has determined that ERISA provides no right of contribution between co-fiduciaries. In response to NCNB's motion to dismiss defendants' counterclaims, defendants argue for the first time that any right of contribution they seek arises under state, not federal, law.

The Uniform Contribution Among Tortfeasors Act, Section 768.31, *Florida Statutes,* provides that the Act "shall not apply to breaches of trust or of other fiduciary obligation." Fla.Stat. § 768.31(2)(g) (1987). *See also Eason v. Lau,* 369 So.2d 600, 602 (1st DCA 1978), *cert. denied,* 368 So.2d 1365 (Fla.1979). If, as defendants Fairchild and the Fairchild Directors contend, they were not "fiduciaries" at the time of the challenged conduct, no liability can be imposed and Section 768.31 will not be invoked. On the other hand, should defendants be found liable for damages resulting from a breach of fiduciary duties, the statute expressly precludes the right to contribution between co-fiduciaries. Therefore, plaintiffs' motions to dismiss defendants Fairchild and Fairchild Directors' counterclaims for contribution are GRANTED.[8]

III. *Third–Party Defendant FDIC's Motions to Dismiss Third–Party Complaint of GMF, GMF Director, Fairchild and Fairchild Directors.*

Defendants' third-party complaints against the FDIC suffer from the same infirmity as their counterclaims against plaintiff NCNB. Again, defendants allege that as successor to First Republic's assets and liabilities, the FDIC assumed any liabilities stemming from any breach of fiduci-

---

**8.** In this court's order of September 19, 1990, I requested that the parties submit briefs addressing the preemptive effect of ERISA on defendant Industries' counterclaim for contribution under Florida law. (doc. 142). Because I have concluded that Section 768.31 is inapplicable to this action, I find it unnecessary to address the preemptive effect of ERISA. Furthermore, be-

cause defendants have insisted that their asserted right of contribution arises under state law, I find it unnecessary to address the availability of contribution under federal law. *But see Call v. Sumitomo Bank of California,* 881 F.2d 626, 631 (9th Cir.1989); *Kim v. Fujikawa,* 871 F.2d 1427, 1432 (9th Cir.1989) (no right to contribution under ERISA).

ary duty attributable to First Republic. In its memorandum in opposition to FDIC's motion to dismiss the third-party complaint, defendants assert that they are "thus entitled to *state*-law contribution, indemnification, or both from RepublicBank if [the defendants are] found liable to plaintiffs in the underlying actions." (doc. 87, p. 1–2) (emphasis added).[9] Defendants claim that as successor to the fiduciary obligations of First Republic, the FDIC must also assume any obligations of contribution to which First Republic would have been subject had First Republic been found liable for breach of fiduciary duty. Thus, by defendants' own admission, the existence of a claim of contribution against the FDIC necessarily depends on the existence of such a claim against First Republic. Because Florida law does not provide for contribution for "breaches of trust or other fiduciary obligations," *see supra*, the defendants would have no claim against First Republic for contribution should defendants be held responsible for breach of fiduciary duties. Therefore, no corresponding claim may be asserted against Republic Bank's successor, the FDIC. FDIC's motions to dismiss the third-party complaints of defendants Fairchild, the Fairchild directors, and the GMF Directors are hereby GRANTED.

DONE AND ORDERED.

---

**9.** Again, because defendants have restricted the scope of their third-party complaint to a claim of contribution under Florida law, I find it unnecessary to determine whether ERISA provides for contribution between co-fiduciaries or whether the broad ERISA provision preempts any claim for state statutory contribution. Nor do I decide whether the FDIC would be liable for contribution on claims other than breach of fiduciary duty. *But see Trigo v. Federal Deposit Ins. Corp.,* 847 F.2d 1499, 1503 (11th Cir.1988); *Federal Deposit Ins. Corp. v. James T. Barry Co.,* 453 F.Supp. 81, 82–83 (E.D.Wis.1978) (FDIC, in its corporate capacity, is insulated by federal law from liability arising out of failed bank's wrongdoing).