**UNITED STATES of America**

v.

**Joseph NOBLE, a/k/a Joseph Soto, Appellant.**

**No. 06–3373.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 25, 2007.

Filed: Oct. 29, 2007.

Curtis R. Douglas, Anthony G. Kyriakakis, Office of United States Attorney, Philadelphia, PA, for Appellee.

Michael J. Diamondstein, Philadelphia, PA, for Appellant.

Before: AMBRO, JORDAN and ROTH, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Joseph Noble was convicted after a jury trial of kidnaping, in violation of 18 U.S.C. § 1201(a). He appeals that conviction, asserting that the government improperly suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the evidence at trial was insufficient to support his conviction, and that the District Court improperly excluded evidence. For the following reasons, we will affirm.

## I.

On November 13, 2004, Noble had an argument with his wife, Joanne,[1] and threatened her. Joanne packed a few clothes and went to stay with her stepsister, Krislyn Ruth, in South Philadelphia. A few days later, on November 17, Noble called Joanne and told her that their two children were sick and wanted to see her. She agreed to meet him outside Ruth's house. When he arrived, he invited her to lunch but she declined. Joanne testified that when she refused to go to lunch with him, Noble became upset, picked her up and, despite her kicking and screaming, carried her to his car, where their children were waiting. Noble put Joanne into the front passenger seat of the car, placed their daughter on her lap, ran around the car, and drove away. Joanne testified that, because her daughter was on her lap and her son was in the back-seat, it was impossible for her to escape the car before Noble drove away. Ruth, who heard the fight from inside her house, called the police to report Joanne's abduction.

According to Joanne's testimony, Noble was "running lights, speeding, yelling, and then just driving on the wrong side of the road[.]" (Appendix [App.] at 51.) She testified that, at some point, she heard police sirens, and believed that police cars were following them. Noble continued to speed as he drove across the Walt Whitman Bridge into New Jersey. According to Joanne, Noble told her that it "was going to be [their] last day together," and he asked her "how it would feel if [they] were to flip, if [they] were to smash into a wall[.]" (App. at 54.)

Joanne testified that, once they were in New Jersey, Noble slowed the car to a normal rate of speed and told her that they and their children "were going to spend time together as a family." (App at 55.) He stopped for gas and food several times, but threatened Joanne not to let anyone know about her situation. Noble had also dismantled his cell phone so that

---

1. To avoid confusion, we refer to Mrs. Noble by her first name throughout this opinion.

he could not be tracked, and he used cash to pay for gas so that he did not "leave a trace of where [they] were." (App. at 59.) Noble ultimately took them to a hotel in Kingston, New York, where he got a room. Joanne testified that Noble backed his car into a spot right in front of the room, so that no one could see the license plate, and paid for the room with cash, so that he could not be traced. Joanne also testified that she told Noble she wanted to go home, but that Noble told her he wanted their family to spend the night together at the hotel. She further testified that, at the hotel, Noble twice forced her to have intercourse with him, but that she did not physically resist because her children were close by.

The next morning, Noble drove his family back to Philadelphia. On the way home, he learned that the police were looking for him. He drove his family to his lawyer's office in Philadelphia, where Joanne spoke on the phone with a detective. The detective met with her and suggested that she go to a hospital for treatment. After another officer took the children to a babysitter's house, Joanne went to the hospital. Although it is unclear from the record how Noble knew that Joanne was at the hospital, he appeared there and confronted her in the waiting room. At that point, the officer who had accompanied Joanne to the hospital arrested him. Joanne was subsequently interviewed by the police, and the police took pictures of a bump on her head and bruising on her arm that she got when Noble forced her into his car.

After he was arrested, Noble wrote several letters to his wife and his children. Among other things, Noble wrote to his daughter: "I promised you I would find mommy for you, and I did. What happened next daddy still doesn't understand. I'm sorry for running from the police with you in the car." (App. at 109.) To Joanne Noble, he wrote "Jo, I didn't go see you for sex. I wanted the kids to have their mommy back.... I'll never sin against you again. I was wrong." (App at 110.) Noble also stated "I don't want to hurt anyone. I don't want to hurt myself. If you don't stop this for me, please do it for the kids. Call my lawyer, and he will assist you in what needs to be done." (App at 110–11.)

Joanne Noble testified before the grand jury on June 30, 2005. The grand jury returned an indictment charging Noble with one count of kidnaping, in violation of 18 U.S.C. § 1201, and one count of interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(1). After a five-day trial, the jury found Noble guilty of the kidnaping charge, and not guilty of the domestic violence charge.

In November of 2005, Joanne Noble was arrested after police caught a man attempting to sell her a small amount marijuana. She thus had open criminal charges pending against her at the time of trial. This fact was apparently unknown to the government at the time of trial, and thus was not disclosed to Noble. The record does not reflect how this evidence came to light. Noble filed a post-trial motion pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), arguing that he should get a new trial because of the government's failure to disclose that evidence. The District Court denied Noble's motion for a new trial, stating that the evidence of Joanne's criminal charge was not material to Noble's case, as there was no "reasonable probability" that it would have affected the outcome of the case.

Noble timely appealed the ruling of the District Court. On appeal, he asserts that the District Court erred when it failed to grant him a new trial based on the *Brady* violation. Noble also asserts that the evi-

dence presented at trial was insufficient to support his conviction, and that the trial court erred when it prevented him from introducing the entirety of the letters that he wrote to his wife and children.

## II.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

## A.

Noble first asserts on appeal that he is entitled to a new trial because the government failed to turn over information that Joanne had open criminal charges[2] against her. Noble argues that the government's failure to turn over that evidence was a violation of *Brady v. Maryland.* A motion for a new trial is normally reviewed for abuse of discretion, "but where the denial of the motion was based on the application of legal precepts we exercise plenary review." *Hook v. Ernst & Young,* 28 F.3d 366, 370 (3d Cir.1994).

Under *Brady,* "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material to either guilt or punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. "To establish a due process violation under *Brady* ... a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed

evidence was material either to guilt or to punishment." *United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir.2005) (citations and internal quotation marks omitted).

■ The government was clearly obligated to provide evidence of Joanne's drug charges since that information was available to it.[3] There is also no question that that evidence would have been favorable to Noble's defense as impeachment evidence. The remaining question is whether evidence that Joanne was arrested and charged would have been material to Noble's defense. Evidence is material when there is a reasonable probability that it would have affected the outcome of the trial. *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.") (internal quotation marks omitted).

■ Noble argues that evidence of Joanne's drug arrest would have undermined her credibility and that, if the jury had not believed her, there was a reasonable probability that the outcome of his trial would have been different since she

---

**2.** Although the record does not contain evidence showing what Joanne Noble was charged with, the government, in its brief opposing Noble's Brady motion, stated that Joanne was charged with five misdemeanors, including criminal conspiracy, purchase/receipt of controlled substance by unauthorized person, possession of marijuana—small amount personal use, possession of a small amount of marijuana to distribute not sell, and use/possession of drug paraphernalia.

**3.** The government asserts that it was unaware of the charges pending against Joanne at the time of the trial. It also acknowledges, however, that it had an affirmative duty to investigate her criminal record. *United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir.1991) ("[T]he prosecution is obligated to produce certain evidence actually or constructively in its possession or accessible to it[.]").

was the sole witness who testified to the events of the kidnaping. While it is true that, as a general matter, evidence affecting a witness's credibility can be material to guilt or innocence, *see United States v. Biberfeld,* 957 F.2d 98, 103 (3d Cir.1992) ("witness' credibility is material to guilt or innocence"), the evidence of Joanne's arrest was not material here.

■ Noble first suggests that he could have introduced evidence of Joanne's drug charges to show that she was "testifying for the government in the hope that it might somehow favorably affect the outcome of her criminal matter." Noble does not and cannot show that the federal prosecutors handling his case knew of Joanne's arrest at the time of his trial. It is possible that, despite the government's lack of knowledge of her arrest, Joanne tailored her testimony to curry favor with the government. That possibility, however, is nullified by the fact that her testimony at trial was substantially the same as the testimony that she gave in front of the grand jury in June, 2005, months before her November, 2005 arrest. Thus, Noble has nothing but speculation to support his assertion that Joanne testified against him to curry favor with the government. *See Barker v. Fleming,* 423 F.3d 1085, 1099 (9th Cir. 2005) (rejecting defendant's claim that a *Brady* violation occurred as "mere speculation" where defendant suggested, without proof, that a witness had testified against him in exchange for a charge being dropped). That speculation does not create a reasonable probability that evidence of Joanne's criminal charges would have affected the outcome of Noble's trial.

■ Noble also argues that evidence of Joanne's drug charges would have helped him to prove his claim that Joanne had drugged him because she was having an affair. However, Joanne admitted at trial to having used Percocet with Noble around the time of the incident. She also admitted to having had an affair, which she alleged began after the incident. Furthermore, Noble presented testimony at trial that, on two occasions, Joanne put pills in tea that she served him, that he fell asleep twenty to forty minutes later, and that she went out after he fell asleep. Thus, the evidence that she was arrested on misdemeanor marijuana possession charges was not likely to have affected her credibility in any significant degree, in light of this other testimony. Therefore, there is not a reasonable probability that the evidence of her arrest would have changed the outcome of Noble's trial.

■ Finally, Noble claims that Joanne's drug arrest undermines her testimony that the reason she did not attempt to escape from Noble was because her children were in the car. According to Noble, Joanne's professed concern for her children cannot be believed because she endangered her children by receiving and using drugs in the house she shared with them. However, the danger to the Noble children during a kidnaping in which Noble threatened to crash the car was of an immediate and intense character, whereas the danger to them from their mother's possession of a relatively small amount of marijuana,[4] though a real danger too, was less immediately threatening. It is unlikely that evidence of her drug arrest would have undermined her assertions that she did not escape Noble because she feared for the safety of her children. We thus conclude that there is no reasonable probability that evidence of her arrest would have led to a

---

4. We do not know the disposition of the criminal charge against Joanne but assume for the sake of argument that she in fact did possess marijuana in an amount consistent with personal use.

different outcome in the trial, and Noble's *Brady* violation claim must therefore fail.

### B.

Noble next argues that the evidence presented at trial was insufficient to support his conviction. In ruling on such a claim, we examine the record in the light most favorable to the government to determine "[i]f there is substantial evidence upon which a reasonable jury could have based its verdict[.]" *United States v. Davis*, 183 F.3d 231, 238 (3d Cir.1999).[5]

■ Specifically, Noble asserts that Joanne had numerous opportunities to escape or to alert someone to her plight but did nothing, and thus, he argues, the government failed to show that she was taken across state lines without her consent, one of the elements of the crime of kidnaping under 18 U.S.C. § 1201.[6] Joanne testified, however, that Noble picked her up, put her in the car, and drove off at a high rate of speed before she was able to escape. She also testified that Noble sped through the City of Philadelphia, despite being chased by police officers, and that he did not slow the car to a normal rate of speed until after he had entered New Jersey.[7] Her testimony therefore provides substantial evidence to support the jury's verdict.

### C.

Finally, Noble claims that the District Court erred when it refused to admit into evidence the entirety of the letters he wrote to his wife and daughter after the crime. The prosecution offered portions of the letters into evidence, and Noble moved to have the entirety of the letters admitted. The District Court's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 327 (3d Cir.2001).

Noble asserts that the District Court's denial of his motion was an abuse of discretion under Federal Rule of Evidence 106. That rule provides that

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

We have interpreted this rule to mean that the remainder of a writing is required to be read "if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir.1984). Noble asserts that the remainder of the letters should have been introduced because they were intended as an apology, not an admission of guilt, and that the omitted

---

5. The government argues that Noble's claim should be reviewed under the plain error standard because he failed to preserve it at trial. Because we find that, in any event, there is substantial evidence to support the jury's verdict, we need not address that issue.

6. The elements of the crime are: "(1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully." *United States v. Barton*, 257 F.3d 433, 439 (5th Cir. 2001).

7. Once Noble entered New Jersey, the crossing of a state line without Joanne's consent was an accomplished fact, *see* 18 U.S.C. § 1201, *Barton*, 257 F.3d at 439, and Joanne's failure to escape or notify anyone of her circumstances after they entered New Jersey is only relevant to his guilt insofar as it may have influenced an assessment of the truthfulness of her testimony about her unwillingness to accompany Noble in the first place.

portions explain the admitted portions and put them in context. Further, Noble asserts that, because the District Court denied the admission of the omitted portions, it allowed the prosecution to mislead the jury, thus denying him a fair trial.

The District Court's refusal to admit the remainder of the letters was not an abuse of discretion. The remainder of the letters are a rambling, stream-of-consciousness description of Noble's thoughts while in prison. They do not explain the portions of the letters that the government admitted, or put them into context. Rather, they describe Noble's new-found commitment to religion, his desire to see his wife and children, and the conditions in which he was living. Not admitting them did not mislead the jury or deny Noble a fair trial, and the District Court's decision was not an abuse of discretion.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.