**In re Orlando J. VIDANA, Debtor.**

**William ROEMELMEYER, Trustee Plaintiff,**

v.

**Gloria VIDANA, Defendant.**

**Bankruptcy No. 81–01242–BKC–TCB.**

**Adv. No. 82–0054–BKC–TCB–A.**

United States Bankruptcy Court, S. D. Florida.

April 13, 1982.

Arthur H. Rice, Miami, Fla., for trustee.

Arthur Weitzner, Coral Gables, Fla., for defendant.

Louis Phillips, Miami, Fla., for debtor.

### MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee seeks to avoid a transfer of property by the debtor under 11 U.S.C. § 544 and § 548. Alternatively, he asks that judgment be entered against the de-

fendant transferee for the total amount of the debtor's equity in the property on the date of transfer. (C.P. No. 1). The defendant has answered (C.P. No. 16). The matter was tried on March 18.

The debtor owned a homestead in Miami jointly with his wife as tenants by the entirety. On August 6, 1980 they conveyed the property to his adult daughter, Gloria, who gave no consideration for the transfer. At the time there were outstanding judgments of record against the debtor. Two weeks later, Gloria closed the sale of the property for $150,000 to bonafide third party purchasers. After discharging the mortgage and payment of a broker's commission and other costs of the sale, Gloria paid $5,000 to the debtor's wife for her joinder in the conveyance to Gloria. The balance of the proceeds retained by Gloria was $42,586.

Exactly one year after the conveyance to Gloria, the debtor filed for bankruptcy, listing debts of $370,000.

The trustee has offered no proof that the debtor was insolvent at the time of the transfer, therefore, he must prove that the transfer was made with an actual intent to hinder, delay or defraud creditors. § 548(a)(1). Section 544 which permits reference to State law does not diminish the trustee's burden in this case.

The debtor relies on *Sponholtz v. Sponholtz*, Fla.App.1965, 180 So.2d 497, 501 which contains the following dicta:

"Since homestead property is not subject to the attacks of creditors there can be no fraud connected with this transfer."

See also *Sneed v. Davis*, 1938, 135 Fla. 271, 184 So. 865; 4 *Collier on Bankruptcy* (15th ed.) § 548.02[5]. This line of authority flows from the fact that since a homestead is exempt from the claims of creditors in Florida, its disposition cannot ordinarily be the result of an intent to defraud creditors, because the creditors would have had no claim to the property whether it was transferred or not.

In this case, however, the trustee contends and I find that the conveyance to the daughter and the immediate sale were steps in a prearranged scheme to sell the homestead and to prevent creditors from levying upon the homestead proceeds.

■ I conclude that the debtor intended to hinder, delay or defraud his creditors by the transfer. Homestead proceeds lose their exempt character unless they are promptly reinvested in another homestead. *Orange Brevard Plumbing v. LaCroix*, Fla. 1962, 137 So.2d 201. There is no suggestion here of any such intent. Gloria was merely the debtor's alter ego or a straw man in a plan to convert the homestead into cash and secrete the debtor's share of the proceeds, $42,586.

At the time of the transfer, the debtor and his wife had separated. The homestead was in peril of losing its exempt status. Had the couple sold the property and divided the proceeds, creditors could have satisfied their judgments. If the debtor had done nothing, creditors would eventually have wound up with his share of the equity in the house.

■ The foregoing findings are inferred in part from Gloria's testimony. She has virtually admitted that the money was not hers. She states that she used all the net proceeds, after paying $5,000 to her step-mother, to pay her father's creditors. However, she cannot produce a single check or any other evidence of any disposition of these proceeds, nor can she remember the name of a single creditor she paid. The failure of a party to provide evidence peculiarly available to that party supports the inference that the truth would be damaging to the party. *Allstate Finance Corp. v. Zimmerman*, 5 Cir. 1964, 330 F.2d 740, 744; *International Union (UAW) v. N. L. R. B.*, D.C.Cir.1972, 459 F.2d 1329, 1335. In this instance, I am convinced that Gloria either retains the proceeds for her father or she has turned them over to him. I do not believe that she paid any significant part of the money to any creditors.

If, as is the case here, there is an actual intent to defraud creditors in the disposition of the non-exempt proceeds from the sale of homestead property, the authorities urged

by the debtor have no application. As stated by the court in *Mansell v. Carroll*, 10 Cir. 1967, 379 F.2d 682, 685 in upholding the bankruptcy trustee's right to avoid a fraudulent transfer under a somewhat similar set of facts:

"The homestead exemption is for the benefit of the family and the protection of the family home. It was never intended as a device to effectuate frauds and a court of equity should not countenance any wrongful use of the homestead right. This is an equitable action, and the court, with substantial evidentiary support, has found that all of the transactions pertinent here were a part of a plan and scheme to hinder, delay and defraud creditors."

As is required by B.R. 921(a), a separate judgment will be entered for the trustee against the defendant in the amount of $42,586. Costs will be taxed on motion.