In re BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a the Singer Company, Debtor.

BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a the Singer Company, Plaintiff,

v.

SEMI–TECH MICROELECTRONICS (FAR EAST) LIMITED, Defendant.

Bankruptcy No. 89–8191–8P1.
Adv. No. 90–709.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 16, 1992.

Harley E. Riedel, David B. Potter, Robert H. Wheeler, for debtor/plaintiff.

David A. Jones, Joseph W. Bell, Richard A. Nielsen, for defendant.

William Goldman, Frances H. Cobb, for Creditors' Committee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case, and the matter under consideration concerns the proper calculation of damages to be awarded in favor of Bicoastal Corporation d/b/a Simuflite, f/k/a The Singer Company (Debtor) and against Semi–Tech Microelectronics (Far East) Limited (Semi–Tech) pursuant to the Court's Memorandum of Opinion and Order on Objection and Counterclaim to Claim of Semi–Tech. In the Memorandum of Opinion, this Court concluded that the Debtor is entitled to a Final Judgment in its favor based on Semi–Tech's breach of a royalty agreement (Royalty Agreement) dated May 26, 1989. The Court then scheduled further oral argument to consider the proper calculation of damages and now finds and concludes as follows:

The facts relevant to Debtor's right to damages are set forth in this Court's Memorandum of Opinion and will not be repeated here. However, for purposes of this Order, it is important to note that Paragraph 2.1 of the Royalty Agreement required the Debtor to assign its entire right, title and interest in the Marks to Semi–Tech, free and clear of any interest including the interest of the Debtor. In return, Semi–Tech agreed to pay in perpetuity compensation to the Debtor equal to one and one-half percent of all "gross sales." "Gross Sales" is defined in Paragraph 1.9 of the Royalty Agreement as "the cumulative invoice prices for which Marks Goods and SSMC Goods are sold by [Semi–Tech] and Semi–Tech Related Entities" with several exclusions for freight, sales tax, value added taxes, customs taxes, and similar items.

Paragraph 1.12 defines "Marks Goods" as "goods in association with which any of the Trademarks is used by [Semi–Tech] or a Semi–Tech Related Entity after the Effective Date." Paragraph 1.28 defines "SSMC Goods" as "goods other than Marks Goods, of the type SSMC or any SSMC Related Entity actively sold as of the Effective Date." Paragraphs 1.22 and 1.30 define Semi–Tech and SSMC Related Entities as:

(A) a Person [defined in Paragraph 1.15 as an individual, partnership or other incorporated organization or entity] which is controlled by Semi–Tech or SSMC at the Effective Date;

(B) a Person in existence at the Effective Date which Semi–Tech or SSMC then does not control but in which Semi–Tech or SSMC subsequently acquires control;

(C) a Person not in existence at the Effective Date and formed after the Effective Date in which Semi–Tech or SSMC has shareholdings or other economic interests;

(D) a Licensee, but not including Ryobi Motor Products Corp.; Futura France S.A.; European Home Products Limited; or any existing SSMC dealers authorized to use any of the Trade-marks unless (a) SSMC has shareholdings or other economic interests in the dealer, or (b) the dealer makes payments to SSMC for other than the purchase of Marks Goods.

Semi–Tech's obligations to pay royalties to the Debtor commenced immediately upon the effective date of the Royalty Agreement, i.e., on April 15, 1989 and are payable in arrears 60 days after the end of each quarter.

Paragraph 6.1 of the Royalty Agreement requires Semi–Tech to provide a statement setting forth the amount of gross sales within 60 days of the end of each quarter; and to furnish its unaudited financial statements within 90 days of the end of the first

half of each fiscal year. Paragraph 6.1 also requires Semi–Tech to deliver to the Debtor within 180 days of the end of the fiscal year "a statement, certified by its independent auditors (which shall be a 'Big Eight' accounting firm), setting forth the amount of Gross Sales" as well as Semi–Tech's annual audited financial statements. In addition, Paragraph 9.2 of the Royalty Agreement provided that if Semi–Tech fails to make the payments to the Debtor as required by the Royalty Agreement, the Debtor is entitled to "the value of unpaid amounts, plus all costs and expenses including attorneys' fees necessary to obtain such damages, and interest on such damages at a rate of seventeen percent (17%) per annum."

It is undisputed that as of the date of the final evidentiary hearing, Semi–Tech had not complied with Paragraph 6.1 of the Royalty Agreement, despite numerous orders of this Court directing Semi–Tech to do so. Therefore, the Debtor was compelled to hire Coopers & Lybrand to calculate the gross sales on which royalties would be based. It should be noted that Semi–Tech did not furnish the Debtor with a certified statement regarding gross sales as required by the Royalty Agreement until July 7, 1992, close to a full year after the final evidentiary hearing. Needless to say, there is no evidentiary basis for this Court to consider these calculations at this late date.

 It is well established that the failure of a party to provide evidence, in this case the certified gross sales statement, peculiarly available to that party supports the inference that the truth would be damaging to the party. *In re Vidana,* 19 B.R. 787 (Bankr.S.D.Fla.1982). An appropriate remedy for one party's failure to supply court ordered accountings is to adopt the accountings performed by the other party's accountants. *Standard Scale Supply Co. et al., v. Cropp Concrete Mach. Co. et al.,* 6 F.2d 447 (7th Cir.1925). As a result, this Court is satisfied that it is proper to adopt the calculations of Coopers & Lybrand and its conclusions of royalty payments based on gross sales with certain exceptions.

Coopers & Lybrand calculated gross sales as follows:

(1) Start with Semi–Tech's Consolidated Net Revenues;

(2) Add the net revenues of other entities that meet any one of the four Semi–Tech Related Entities test (Royalty Agreement at ¶ 1.22);

(3) Adjust revenues in relation to items such as currency exchange, freight and taxes (Royalty Agreement at ¶ 1.9);

(4) Subtract non-Mark Goods (Royalty Agreement at ¶ 1.12);

(5) Add back any portion of non-Mark Goods that are SSMC Goods (Royalty Agreement at ¶¶ 1.28 and 1.9); and

(6) The total is Gross Sales which is multiplied by 1.5% to determine the royalty.

Included within Cooper & Lybrand's calculation of gross sales are sales generated by Singer Europe, Singer Thailand, Singer Japan, Singer Turkey and Singer India. The Debtor contends that Semi–Tech controls these entities, and therefore these are Semi–Tech Related Entities which should be included in the calculation of gross sales. Paragraph 1.6 of the Royalty Agreement provides that an entity is controlled by Semi–Tech if Semi–Tech, SSMC or any other entity Semi–Tech controls has "voting control [of that entity] in excess of 50%, or shareholdings or other economic interests in excess of 50% ..."

Without considering Coopers & Lybrand's interpretations of which of these entities should be included in the calculation of gross sales, this Court is satisfied that Singer Europe's sales should be included as it is a Semi–Tech related entity as of March 1, 1990. There is no question that prior to March 1, 1990 Singer Europe was not controlled by Semi–Tech and held a royalty-free license to use the Singer Marks. Under Part (D) of Paragraph 1.22 of the Royalty Agreement, Semi–Tech did not have to pay a royalty on sales by Singer Europe, and Singer Europe was already entitled to use the license. However, in March of 1990, Semi–Tech acquired Sing-

er Europe and therefore was required to pay royalties on Singer Europe's sales pursuant to Part (A) of Paragraph 1.22 of the Royalty Agreement, as Semi–Tech clearly had control of Singer Europe. As an entity only has to qualify under one of the four sub-parts of Paragraph 1.22 to be a Semi–Tech related entity, it is clear that Singer Europe should be included in the calculation of gross sales.

Regarding Singer Thailand, it is without dispute that SSMC owns only 48% of the stock and six of the Singer Thailand directors are officers of SSMC. Two additional directors are employees of Singer Thailand, who report to James Yuan, an officer of SSMC and managing director of Singer Thailand. Yuan has the power to demote and fire these two directors. Therefore, this Court is satisfied that the evidence is sufficient to establish that Semi–Tech had a de facto control of Singer Thailand.

Regarding Singer Japan, Singer Turkey, & Singer India, it is undisputed that Semi–Tech owns less than 50% of the stock of these entities. It is also clear that the record is insufficient to permit this Court to determine whether Semi–Tech has voting control of these entities, due to the fact that Semi–Tech failed to produce evidence regarding the makeup of the boards of directors of these entities. As stated before, where a party has failed to provide evidence within its control, a presumption exists that the evidence would be damaging to that party. *See In re Vidana, supra.* Therefore, it is appropriate to conclude that these entities are controlled by Semi–Tech and should be included in the calculation of gross sales.

Semi–Tech has made a $1.1 million payment for the period April 15, 1989 to April 30, 1991. Therefore, this Court is satisfied that the Debtor is entitled to royalties and interest for the period of April 15, 1989, to April 30, 1991, as follows:

| | Royalties | Interest (through 6/25/92) |
| --- | --- | --- |
| Core Semi–Tech Entities | $15,213,000 | $4,808,000 |
| Singer Europe | 8,816,000 | 2,187,000 |
| Singer Thailand | 4,385,000 | 1,484,000 |
| Singer Japan | 4,695,000 | 1,336,000 |
| | $33,109,000 | $9,815,000 |
| Total Royalties & Interest | | $42,924,000 |

The Debtor is also entitled to royalties for Singer India and Singer Turkey, and Semi–Tech shall be directed to provide to the Debtor a statement, certified by its independent auditors, setting forth the amount of gross sales for these entities.

The royalties set forth above will bear interest at the rate of 17% as required by the Royalty Agreement. Further, royalties should be calculated in the same manner in the future. In calculating the gross sales in the future, Semi–Tech shall be directed to use the method of currency conversion used by Coopers & Lybrand. Finally, the Debtor is entitled to reasonable attorneys' fees and costs which will be awarded upon the Debtor's filing an appropriate motion.

A separate Final Judgment to be submitted by counsel for the Debtor shall be entered in accordance with the foregoing. DONE AND ORDERED.