In re Louis J. PAGNOTTI, Jr., Debtor.

Louis J. Pagnotti, Jr., Objector,

v.

Lehigh Valley Coal Sale Co., Jeddo Highland Coal Co., Loree Assoc., Lackawanna Casualty Co., Claimants.

No. 5-97-00245.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes-Barre Division.

Aug. 3, 2001.

Robert C. Nowalis, Doran & Nowalis, Wilkes–Barre, PA, for objector/debtor.

Ernest A. Sposto, Jr., Robert Schaub, Rosenn, Jenkins & Greenwald, L.L.P., Wilkes–Barre, PA, for claimants.

## OPINION[1]

JOHN J. THOMAS, Bankruptcy Judge.

In this case, Louis Pagnotti, Jr. (hereinafter "Debtor") objects to certain proofs of claim filed in his Chapter 11 bankruptcy proceeding, case # 5–97–00245. Debtor filed his voluntary Chapter 11 petition on January 31, 1997. Four creditors (hereinafter "Claimants"), closely related to the Debtor and other members of the Debtor's family, filed proofs of claim in the amounts discussed below on July 2, 1998.

The claims breakdown as follows: (1) Lehigh Valley Coal Sales Company, Inc. (hereinafter "Lehigh Valley") filed a claim against Debtor in the amount of $952,475.35 which is the result of a series

---

1. Drafted with the assistance of Seth Cohen, Law Clerk.

of loans and surety promises made by this Creditor on behalf and in favor of the Debtor between the years 1987 and 1997 [2]; (2) Loree Associates (hereinafter "Loree") asserted a claim in the amount of $60,000.00 for loans made during 1990; (3) Jeddo Highland Coal Co. (hereinafter "Jeddo") advanced a claim against the Debtor in the amount of $306,018.00 stemming from various loans made to the Debtor during the period from October 22, 1990 through December 30, 1991; and (4) Lackawanna Casualty Company (hereinafter "Lackawanna") having a claim against the Debtor in the amount of $17,485.74, to which Debtor dropped his objection. (Audio Tape Testimony, October 26, 2000.) The combined claims against the Debtor total $1,318,493.35.[3]

I was asked to render a decision as to whether certain counter-read portions of Debtor's deposition were admissible as well as to determine whether the Claimants met their burden of proving their claims valid. For the reasons enunciated, I will sustain Claimants' objections to the admissibility of Debtor's proffer of evidence. Further, I find, with the exception of two debts owed to Lehigh Valley and the aforesaid claim of Lackawanna, that Claimants have not proven by a preponderance of the evidence that their claims are still valid.

## I. CLAIMANTS' OBJECTION TO COUNTER–READ PORTIONS OF DEPOSITION

During the trial, an issue was raised as to the admissibility of certain portions of a deposition the Debtor had given on May 11, 1999. Claimants' counsel read portions of Debtor's deposition into the record as

admissions of the Debtor. (Audio Tape Testimony, October 26, 2000.) The portions read by Claimants' counsel pertained to the Lackawanna, Jeddo, and Lehigh Valley claims and, in particular, whether money was in fact owed. (Audio Tape Testimony, October 26, 2000, referencing Debtor's deposition.)

Debtor's counsel, not having received the portions proffered prior to that day's trial, requested, and was granted an opportunity to counter-read portions of the same deposition into the record. *Id.* This counter-reading took place the next day. (Audio Tape Testimony, October 27, 2000.) One of the counter-read portions dealt with the Loree claim and is as follows:

Q. Do you recall, in 1990, receiving any money from Loree Associates?

A. That, I do not recall. I am not denying it; I just do not recall.

Q. In or about 1990, generally, concerning Loree, were there distributions that were made?

A. To me, individually?

Q. Just generally. Whether—I'll ask that in a minute but just generally as to Loree Associates, do you have any knowledge or recollection in or about 1990, '89, '88, '91, thereabouts, or Loree distributing monies to any—

A. To others?

Q. To any of his partners.

A. I do not recall it, no.

Q. And then again, just so I'm clear, do you recall in 1990 receiving any checks made payable to you from Loree Associates?

A. I do not recall.

---

**2.** Two of these debts in the amount of $289,027.35 have been conceded by Debtor as actionable under the applicable statute of limitations 42 Pa.C.S.A. § 5525(3).

**3.** The Lackawanna Casualty Company's claim is not included in this figure.

(Debtor's Deposition Transcript Read Into The Record (hereinafter "Debtor's Deposition"), Audio Tape Testimony, October 27, 2000.)

Another colloquy pertained to interest payments on the Lehigh Valley claim and is as follows:

Q. Was there any discussion at the time the checks were delivered to you as to whether interest would be applied to the amounts given to you?

A. There was no discussion on interest, no.

Q. As an officer of Lehigh Valley, did you have any understanding as to whether you would pay interest on the amounts given to you?

A. No.

Q. Was it ever your intention to pay interest on any amounts that were provided to you on the three checks that I've mentioned?

A. No.

(Debtor's Deposition, Audio Tape Testimony, October 27, 2000.)

Claimants objected to these two counter-read portions, and I took the objection under advisement. (Claimants' Supplemental Brief in Support of Claims of Lehigh Valley Coal Sales Company, Inc., et. al., at 6–7 (Doc. # 203).)

The use of depositions at trial is governed by Federal Rule of Civil Procedure 34, which states, in pertinent part:

(a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had

reasonable notice thereof, in accordance with any of the following provisions:

. . .

(a)(4) If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which *ought in fairness* to be considered with the part introduced, and any party may introduce any other parts . . . .

FED.R.CIV.P. 32(a)(4) (emphasis mine).

Federal Rule of Evidence 106 also governs this issue. It succinctly states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which *ought in fairness* to be considered contemporaneously with it.

FED.R.EVID. 106 (emphasis mine).

The importance of bringing out such *related material* at the time of introduction is apparent. First, it avoids the danger of mistaken or misleading first impression when matters are taken out of context. Second, it avoids the inadequate remedy of requiring the adverse party to wait until a later point in the trial to repair the case . . . .

To be admitted under Rule 106, the additional writing or recorded statement or any part thereof *must relate to the same subject matter and tend to explain, qualify or otherwise shed light on the part already received.*

§ 106.1 Remainder of or Related Writings and Recorded Statements Employed at Time of Introduction. West's Bankruptcy Series, Bankruptcy Evidence Manual, 2001 Edition (emphasis mine).

Thus, the counter-reading of a deposition into the record should relate to testimony it is countering.

The principle of fairness running through these two rules is directly related to the doctrine of completeness in which a "second writing may be required to be read if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir.1984), *cert. denied* 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985), citing *United States v. Marin*, 669 F.2d 73, 84–85 (2d Cir.1982). "The Rule does not require the introduction of portions of a statement that are neither explanatory of nor relevant to passages already admitted." *Id.* "[I]t is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." Mueller & Kirkpatrick, Evidence, § 1.18 at 71 (1995); See also, *United States v. Soures, supra.*

Courts have "enormous discretion to determine whether a proponent should be required to introduce the whole (or all relevant parts) of a document, or be precluded from introducing any part of it." *In re Paoli R.R. Yard PCB Lit.*, 113 F.3d 444, 454–55 n. 6 (3d Cir.1997). Given this authority and applying it to the counter-read portion of the Debtor's deposition, I find that these counter-read portions, under the completeness doctrine, are not sufficiently related to the portions of the deposition read into the record by Claimants' counsel the previous day.

The colloquies counter-read by Debtor's counsel, reprinted above, pertain to the Loree claim and the interest component of the Lehigh Valley claim. The portions Claimants' counsel read during the first day of testimony did not include discussions about the Loree claim or an inter-

est component of the Lehigh Valley Claim. (See generally, Debtor's Deposition, Audio Tape Testimony, October 26, 2000.) None of the portions of the same deposition offered into evidence by Claimants' counsel touched on these subjects. (Audio Tape Testimony, October 26, 27, 2000.) Therefore, I find that these counter-read colloquies are not necessary to explain the admitted portion, place the admitted portion in context, avoid misleading the trier of fact, or insure a fair and impartial understanding. Since these portions did not relate to what was previously read, I find that the requirements of the completeness doctrine, enumerated in Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 32, as discussed above, have not been met. Thus, the counter-readings should not be admitted as offered, i.e., to counter the portions of the Debtor's deposition read into the record by Claimants' counsel. Therefore, I will sustain the objections to the two portions of Debtor's deposition counter-read by Debtor's counsel.

## II. VALIDITY OF CLAIMS

I now turn to the issue of the validity of the claims. In order for a claim to be valid, a claimant must meet its burden of proof. In a bankruptcy case, a proof of claim filed with the bankruptcy court is prima facie evidence of the validity of the claim. Federal Rule of Bankruptcy Procedure 3001(f). Under § 502(a), a party may object to the proof of claim, whereupon the burden of going forward shifts to the objecting party to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992); 11 U.S.C. § 502(a). However, the burden of persuading the court that the claim is valid remains with the claimant. *In re Holm*, 931 F.2d 620, 623 (9th

Cir.1991) (quoting *Collier* §§ 502.02, at 502–22); *In re Windsor Communications Group, Inc.*, 45 B.R. 770, 773 (Bankr. E.D.Pa.1985).

I ruled during the trial that the Debtor–Objector met his burden of going forward with his objection which shifted the responsibility on the Claimants to go forward to prove their claims. (Audio Tape Testimony, October 26, 2000.) I now turn to whether Claimants have met their burden of proving their claims. In short, I find that Claimants have not overcome Debtor's challenge and only two of their challenged claims are still valid.

The evidence presented includes the proofs of claim, certain portions of Debtor's deposition read into the record, and witness testimony. I find that the evidence shows that there was a series of loans extended by the Claimants to the Debtor over a period of several years. Debtor argued, however, that Claimants are time-barred from asserting their claims. The validity of this position depends on when the statute of limitations to collect a debt starts running, the length of the statute of limitations, and whether Claimants acted within that time period.

■ As a preliminary matter, when there is no statute of limitations contained in the Bankruptcy Code, the statute of limitations under state law is applicable. 1 James Wm. Moore et al., Moore's Federal Practice 3.05[2][a][i] at 3–26, n. 3 (citations omitted). Since the Bankruptcy Code does not contain a statute of limitations governing the period of time in which to commence an action on a debt, I will look to Pennsylvania's statute of limitations for an action on an unwritten express contract. An action to recover a debt under this statute must be commenced within four (4) years. 42 Pa.C.S.A. § 5525(3).

■ When interpreting state statutes, decisions of the state's highest court are binding on federal courts. *Gruber v. Owens–Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir.1990). If the forum state's highest court has not reached a decision, the federal courts must predict how the state's highest court would decide the relevant legal issues. *Grantham and Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 608 (6th Cir.1987). When predicting how a matter would be decided under Pennsylvania law, courts examine: "(1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." *Hughes v. Long*, 242 F.3d 121, \*128, \*129 (3d Cir. 2001) (hereinafter "*Hughes* "), citing *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 406 (3d Cir.2000) (hereinafter "*Boyanowski*") (The Third Circuit lacked "a clear statement from the Pennsylvania Supreme Court" and looked to a Superior Court panel for guidance). In following the Third Circuit's methodology in *Hughes and Boyanowski*, I look to the Pennsylvania Courts for guidance.

Generally, the statute of limitations starts running when a cause of action accrues. *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa.Super.1997) *citing, Packer Society Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center*, 430 Pa.Super. 625, 631, 635 A.2d 649, 652 (1993). To answer when the cause of action accrued, I must determine as a matter of law whether a debt was incurred and, if so, whether it was payable on demand or payable when the Debtor was able to pay. I conclude that although there was an oral understanding between the parties that the Debtor would repay

the loans when he was able, as a matter of law the loans were payable on demand.

In making these findings, I look to the evidence presented. To determine whether the debt is payable "on demand" or "when able", a reference to the familial relationship between the parties is necessary for background. Various witnesses testified to the following: that Claimants are family businesses of which Debtor is a family member; that the family member shareholders/partners[4] had received loans from Claimants at various times; that some loans, repayable with interest, were not always repaid, as in the case of the Debtor's brother; that the Claimants had the right to demand payment; that the Debtor was extended these loans because he was a family member, had equity in the Claimants and could not borrow money elsewhere, and a source of funds was "what the companies were for"; that Claimants did not demand payment because they knew his financial situation made it impossible for repayment; that the parties understood that Debtor would repay the loans when he was financially able to do so; and that the parties never reduced an agreement to repay to a signed writing. (Audio Tape Testimony, October 26, 27, 2000.)

I note that the witnesses who testified were called by the Claimants. Debtor did not testify or call any of his own witnesses to rebut the evidence proffered by the Claimants. The only submission Debtor made was the counter-reading of portions of his own deposition as discussed earlier. That said, Rule 301 of the Federal Rules of Evidence requires that the fact finder draw an adverse inference against the non-testifying party. FED.R.EVID. 301. The failure to provide evidence peculiarly available to a party supports the inference that the truth would be damaging to the party. *United States v. Knox,* 68 F.3d 990 (7th Cir.1995); *In re Bicoastal Corp.,* 149 B.R. 212 (Bkrtcy.M.D.Fla.1992). Here, Debtor chose not to testify thereby creating an adverse inference that his testimony would be damaging.

■ The next step is to determine when the statute of limitations starts running for this kind of debt. Claimants argue that the debt was payable on demand and the cause of action, therefore, accrues only when demand is made. (Claimants' Brief in Support of Claims of Lehigh Valley, et. al., at 9 (Doc. # 198).) Claimants, in arguing that the claims are still valid because a reasonable time for demand to be made had not elapsed, look to several Pennsylvania Superior Court opinions that held up to eleven years was not an unreasonable time in which to bring an action on a debt. (Supplemental Brief In Support of Claims of Lehigh Valley, et. al., at 10 (Doc. # 203).) Specifically they cite to *Nimick v. Shuty,* 440 Pa.Super. 87, 655 A.2d 132 (1995) (Nine years from execution of note was not unreasonable), *Gordon v. Sanatoga Inn, Inc.,* 429 Pa.Super. 537, 632 A.2d 1352 (1993) (Eleven years from execution of the note was not unreasonable), and *Lazzarotti v. Juliano,* 322 Pa.Super. 129, 469 A.2d 216 (1983) (Seven years from execution of note was not unreasonable). I find these authorities unpersuasive as each involved *written* promissory notes for which state law prescribes the beginning point of the statute of limitations.[5] Specifically, 42 Pa.C.S.A. § 5525(7) states:

The following actions ... must be commenced within four years:

4. Loree is a limited partnership.

5. The *Nimick* Court recognized that statutes of limitation apply differently to oral loans than to written notes which conditioned repayment on the making of a demand. *Nimick,* 655 A.2d at 136.

(7) An action upon a negotiable or non-negotiable bond, note or other similar instrument *in writing*. Where such an instrument is payable on demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument.

42 Pa.C.S.A. § 5525(7) (emphasis added). Although demands on the notes in the three cases cited above took place more than four years after their execution, the courts applied § 5525(7) and held that the statute of limitations began running from when the demand was made. Here, the proper statute of limitations to apply is § 5525(3),[6] which does not give specific guidance as to when the statute begins to run. Because of this significant difference, I cannot follow the authority cited by the Claimants.

Since I am not persuaded by Claimants' argument regarding the running of the statute of limitations, I must look to other Pennsylvania cases to predict how the state courts would hold if they were deciding this case. One such case from the Pennsylvania Superior Court is *Gurenlian v. Gurenlian*, which held that the statute of limitations begins to run when the loan is extended. *Gurenlian v. Gurenlian*, 407 Pa.Super. 102, 595 A.2d 145 (1991). In *Gurenlian*, the debt was accumulated between relatives. There, the father paid an IRS debt on behalf of his son and daughter-in-law. *Id.* at 147. There was an understanding that the son and daughter-in-law would repay the father when they were able. *Id.* The *Gurenlian* Court found that such an oral agreement that did not contain conditions precedent or terms for repayment "was not [a loan] where

demand was necessary to perfect a cause of action, and thus the running of the statute of limitations was not contingent on a demand being made." *Id.* at 150. The Superior Court upheld the trial court, which found [the] "loan ... was repayable on demand and that, therefore, the 'action for repayment would accrue immediately upon lending the money as payment could be requested at any time.' " *Id.* at 149–50.

The *Gurenlian* Court further dismissed the argument that the statute of limitations commenced running from the lapse of a reasonable period of time or when the Debtor had the ability to pay. Its holding was consistent with the view that in order to avoid "evidentiary problems inherent in proving the state of the debtor's finances at various times prior to the initiation of an action, ... [courts] have often adopted the more easily proven time of the making of the loan for the beginning of the statute of limitations." *When Statute of Limitations Begins to Run Against Action Based on Unwritten Promise to Pay Money Where There Is No Condition or Definite Time for Repayment*, 14 A.L.R.4th 1385 (1982) (Volume 14 (1982) Current through the September 2000 Supplement) (Publication page references are not available for this document). This approach gives parties a definite time from which to consider the repayment of a debt and reduces resources needed to determine debtor's ability to repay the debt and in determining a reasonable amount of time. Since the facts are so similar to *Gurenlian*, I predict that the Pennsylvania courts would find that the statute of limitations in this case began running at the times the loans were extended. Thus, the statute of limitations,

---

**6.** This subsection states:
   The following actions and proceedings must be commenced within four years: ...

(3) An action upon an express contract not founded upon an instrument in writing. 42 Pa.C.S.A. § 5525(3).

as applied to the case at hand, ran on all but two of the claims at issue.

From a number of loans extended between 1987 and 1993, there were two debts incurred to Lehigh Valley that fall within the statute of limitations and are actionable by the Claimants. The first loan was extended from Lehigh Valley on November 22, 1993 in the amount of $6,408.92. The second relates to a certificate of deposit in the amount of $282,618.43 that Lehigh Valley offered as surety to Old Forge Bank to secure a private loan for the Debtor. Debtor defaulted on the loan and Lehigh Valley forfeited the certificate of deposit on February 3, 1997. Finally, at oral argument on November 14, 2000, Debtor's counsel conceded that both of these debts were not time barred by the statute of limitations. (Audio Tape Testimony, November 14, 2000.) I find that the statute of limitations has not run for actions on these two debts.

I also find that the statute of limitations on actions to collect these two Lehigh Valley debts has been tolled. Subsection 108(c) of the Code tolls statutes of limitations for thirty days after notice of the termination or expiration of the automatic stay. 11 U.S.C. § 108(c). This subsection extends the statute of limitations for creditors commencing actions on outstanding debts. Since the statute of limitations has not run on actions to collect either of the two aforementioned Lehigh Valley claims, they were tolled by the Debtor's bankruptcy filing in January 1997.

Furthermore, I am not persuaded by Claimants' argument that the statute of limitations was tolled by Debtor acknowledging all of the incurred debts during negotiations between the parties in 1996. It is true that a statute of limitations can be tolled by the acknowledgment of a debt. However, that acknowledgment must be clear and not just a mere willingness to pay. According to the acknowledgment doctrine,

> [a] clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt; and the acknowledgment must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to [honor] an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise.

*Huntingdon Finance v. Newtown Artesian,* 442 Pa.Super. 406, 659 A.2d 1052 (1995), *relying on Gurenlian v. Gurenlian,* 407 Pa.Super. 102, 114, 595 A.2d 145, 151 (1991).

Even applying the inference that the failure of the Debtor to testify should be considered adversely against him, I find that Claimants' negotiations with Debtor in 1996 to reduce the debt owed to writing is not an acknowledgment for purposes of the doctrine discussed above.

I find that the four-year statute of limitations of 42 Pa.C.S.A. § 5525(3) has not been tolled through an acknowledgment of the debts. Only the two aforementioned debts involving Lehigh Valley have been tolled through § 108(c) of the Code. In addition to the Lackawanna claim, I find that only these two Lehigh Valley debts are still actionable and valid.

An Order will follow.

## *ORDER*

For the reasons indicated in the Opinion filed this date, the Debtor's Objections to the Claims of Loree and Jeddo are sustained. Further the Debtor's Objection to the Claim of Lehigh Valley is sustained except as to the debt incurred on November 22, 1993 in the amount of $6,408.92 and the debt associated with the forfeiture of the certificate of deposit on February 3, 1997 to Old Forge Bank in the amount of $282,618.43. Further, the objection to the Lackawanna Claim has been withdrawn on the record at the time of hearing.