**In re MICHAEL ANGELO CORRY INN, INC., Debtor.**

**Gary V. Skiba, Trustee, Movant,**

**v.**

**John Tobias, Respondent.**

**No. 01–11201.**

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 27, 2003.

Gary V. Skiba, Erie, PA, trustee.

Wayne G. Johnson, Jr., Erie, PA, for trustee.

Michael J. Yurcheshen, Pittsburgh, PA, for John Tobias.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Background

This case was commenced by the filing of an involuntary Petition under Chapter 7 of the Bankruptcy Code against Michael Angelo Corry Inn, Inc. ("Debtor") on June 11, 2001. An Order for Relief was entered on January 10, 2002. Gary V. Skiba ("Trustee") serves as Chapter 7 Trustee.

John Tobias ("John") filed a proof of claim, designated in this case as Claim No. 5, as an unsecured claim in the amount of $228,222. Other than a self-prepared document, John attaches no documentation in support of the claimed amount to the proof of claim.

The Trustee filed an objection to Claim No. 5. The Trustee asserts that John's claim is barred by the applicable statute of limitations.

Attached to his response to Trustee's objection, John submits an Amended Proof

---

1. This Opinion constitutes our findings of fact and conclusions of law.

of claim in the identical amount of $228,222.

Attached to the Amended Proof of Claim is a self-prepared typed listing of "Advances/Loans to Michael Angelo's Corry Inn, Inc. by John Tobias." The typed list is broken down into various categories:

1. Funds from sale of personal assets   $37,090.00

2. Funds obtained on personal credit of John Tobias from financial institutions, credit cards   53,250.00

3. Funds loaned by John Tobias to Michael Angelo's Corry Inn, Inc.   48,500.00

4. Funds loaned to John Tobias and in turn loans by John Tobias to Michael Angelo's Corry Inn, Inc.   54,450.00

5. Funds paid by John Tobias personally to satisfy debts of the corporation (NSF checks)   34,932.00

Also attached are handwritten lists providing some detail of the source of the credit John obtained and information as to the purchasers of John's personal assets. There are also various handwritten receipts which indicate that John received money from individuals in various amounts in 1994. There are also documents to indicate that John loaned $12,500 on February 10, 1994 and $18,000 on June 24, 1994. Those two documents reflect that the funds were for construction. Neither are signed by the Debtor, but are signed by Marta Tobias, with the title of President.

John denies that the claim is barred by the applicable statute of limitations. He posits that "[t]he amounts paid by [John] on behalf of or to the Debtor did not include a date for payment, the understanding between John and the Debtor being that the claim would be paid when Debtor had the ability to do so and/or when demand was made by John. Demand was never made by John nor was the Debtor ever in a financial position to afford payment of the claim."

A trial/evidentiary hearing was held on April 22, 2003. The parties have filed post-trial briefs and the matter is ripe for decision.

*Facts*

Marta Tobias was the sole shareholder of the Debtor. She died in August, 2000. John is her son and served as general manager of the Debtor. The Debtor operated a hotel and restaurant. The family determined to expand the facility to include a large concert hall. The Debtor was unable to obtain traditional financing for construction. To finance the project, Marta and John borrowed money from relatives, friends and credit cards.

John sold personal assets to obtain cash and also utilized insurance proceeds that he received from injuries sustained in a motorcycle accident.

There are no writings between John and the Debtor to evidence the loans or terms of repayment. When asked about the terms of repayment, John testified:

Q. What was your understanding of the terms of repayment?

A. Terms of repayment? Well, when you loan money to your—to your parents, you kind of—I—I believed in the—in the project with her, so, you know, I—I loaned, you know—that's why I sold all of assets to—so we could actually—so she could actually, you know, build this addition. And the terms of repayment were—be at the end of the concert season, which would be, you know, in the fall, I would be, you know, compensated. Because you're talking—you're talking 25, $30,000 a night, you know, on a good concert night. So, you know, 10, $15,000 after a good season can be paid back easily.

Q. Did that occur?

A. The first concert, yes. After that, no.

Q. Were you repaid any amounts after the first concert?

A. I wasn't repaid any amounts from the first concert. I wasn't—I mean, the first concert, yeah, we were—we were all excited. We're like, you know what, you know, this—this—this can work and it will work, and we paid various—I mean, she paid various beer companies, various construction workers, odds and ends. And the second concert, which was Steppenwolf, that was supposed to be my compensation.

Q. But you never got paid from that.

A. No.

Q. Were you repaid any other amounts?

A. No. I wasn't repaid one—one dime of the money I loaned her.

Q. And when, if ever, will you be repaid?

A. Well, I—I didn't want to pressure my mom. You know what I mean? I mean, come on. You know. But she—she swore to me that if this lawsuit was successful—

John attaches an Affidavit to his Amended Proof of Claim. The Affidavit bears an execution date of August 26, 2001. In his Affidavit, John states that his "claim is for repayment of loans I made to the debtor corporation at various times in 1994, in the aggregate amount of $187,500.00." John goes on to state:

> The amounts I loaned to the debtor corporation were used by the debtor for the construction and equipping of a concert hall to be used for the expansion of the debtor's business and other operating capital needs of the debtor. My claim was acknowledged to be due and owing to me by the sole shareholder of the debtor corporation, Marta Tobias,

and at all times was undisputed by the debtor and the debtor's obligation to repay the loan to me was repeatedly confirmed by Marta Tobias.

> I was aware at all times after July 30, 1994 that, as a result of the actions complained of in *Michael Angelo Corry Inn, Inc. et al. v. Michael A. Vega, et al.*, No. 225E of 1996, United States District Court, the debtor was unable to repay the amounts which I loaned it but that the debtor would repay the loan as soon as funds were available and that an award of money damages against the defendants in the above referenced case was being sought. After the debtor was awarded $425,000 by the jury in September 1999 in Civil Action No. 225E, the obligation to repay the debt to me was again confirmed by Marta Tobias. At no time was my claim disputed and the debtor's obligation to repay the loan was repeatedly acknowledged and restated by Marta Tobias until her sudden death on August 23, 2000.

### Discussion

■ When there is no statute of limitations stated in the Bankruptcy Code, the statute of limitations under state law is applicable. *In re Pagnotti*, 269 B.R. 326, 332 (Bankr.M.D.Pa.2001) *citing* 1 James Wm. Moore et al, *Moore's Federal Practice*, 3.05[2][a][I] at 3–26, n. 3 (citations omitted). The Bankruptcy Code does not contain a statute of limitations governing the period of time in which to commence an action on a debt. *Pagnotti* at 332. Under Pennsylvania law, an action to recover a debt based on an unwritten express contract must be commenced within four (4) years. *Id.*; 42 Pa. Cons.Stat. Am. § 5525(3). When an oral contract to repay a loan is formed, the statute of limitations runs from the time the loan was made.

*Id.; Gurenlian v. Gurenlian,* 407 Pa.Super. 102, 595 A.2d 145 (Pa.Super.1991).

■ In this case, it is not clear that any loans were made to the Debtor. It appears that John gave monies to his mother who may have in turn given those monies to the Debtor. No writings were memorialized on transactions between John and the debtor. To the extent that John made loans to the Debtor, John had a right to demand repayment at any time. Debtor would repay when, if ever, able.

To the extent a loan was made to the Debtor, the statute of limitations began running at the time the loans were extended.

■ John asserts that the statute of limitations was tolled by acknowledgement of the debt and promise to repay. "It is true that a statute of limitations can be tolled by the acknowledgement of a debt." *Pagnotti* at 335. "However, that acknowledgement must be clear and not just a mere willingness to pay." *Id.* According to the acknowledgement doctrine:

> [a] clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgement or in the identification of the debt; and the acknowledgement must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to [honor] an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise.

*Id.,* quoting *Huntingdon Finance v. Newtown Artesian,* 442 Pa.Super. 406, 659 A.2d 1052 (1995), *relying on Gurenlian v. Gurenlian,* 407 Pa.Super. 102, 114, 595 A.2d 145, 151 (1991).

■ Here, even the amount and dates of any loan or loans is uncertain. There is uncertainty in identification of the debt. Debtor makes no promise to pay on demand. At best, there is only an expression of a willingness to pay if Debtor is ever successful in obtaining proceeds from a lawsuit. Any expression of a willingness to pay was in the nature of a desire to pay, from which there is no implication of a promise.

### Conclusion

John's claim against the Debtor is barred by the four (4) year statute of limitations of 42 Pa.Cons.Stat.Ann. § 5525(3). The four (4) year statute of limitations was not tolled by an acknowledgement of debt. The Trustee's objection to John's claim will be sustained and John's claim will be denied in its entirety. An appropriate order will be entered.